IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20404-CR-MOORE/GARBER(s)(s)

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

EDUARDO A. MASFERRER,
CARLOS BERNACE, and
JOHN JACOBS,

       Defendants.
_____/

## RESTITUTION ORDER

THIS CAUSE came before the Court upon the adjudication of guilt against the Defendants (DE #511 [Masferrer], DE #520 [Bernace], DE #523 [Jacobs]). Under the Mandatory Victims Restitution Act ("MVRA"), 15 U.S.C. § 3663(a)(1), an award of restitution is mandatory in instances where the defendant is convicted of an offense against property. See, e.g., United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000). As Defendant Eduardo A. Masferrer ("Masferrer") was convicted of, inter alia, securities-related wire fraud, bank fraud, and conspiracy to commit these offenses, restitution is mandatory. Regarding Defendants Carlos Bernace ("Bernace") and John Jacobs ("Jacobs"), restitution is mandatory by agreement of the parties memorialized in their plea agreements which stipulates that their guilty pleas "arise from" an offense amounting to an offense involving property. See Govt. Am. Restitution Memo. at 2 n.1. Defendants Bernace and Jacobs, however, are liable for restitution for the securities and investor fraud counts only.

UPON CONSIDERATION of the briefs, the Sentencing Hearings of each Defendant, the

Restitution Hearing held on September 8, 2006, and the pertinent portions of the record, the Court enters the following Order:

## I. LEGAL STANDARD

Defendants' conduct for which they were convicted affected the market value of the financial instruments underlying the criminal allegations, as well as the value of shares in the publicly-traded Hamilton Bancorp, Inc., and its wholly-owned subsidiary, Hamilton Bank N.A. ("the Bank").[1] The calculation of the precise amount for which the Defendants are liable for restitution purposes (either by statute or by plea agreement) is not susceptible to mathematical certainty. For these reasons, the Court conducted a lengthy evidentiary hearing and examined a large amount of evidence in order to arrive at a reasonable estimate of loss. The Eleventh Circuit Court of Appeals has held that district courts, when determining the amount of loss, are to "make a reasonable estimate of the loss, given the available information." United States v. Snyder, 291 F.3d 1291, 1295 (quoting United States v. Orton, 73 F.3d 331, 334 (11th Cir. 1996)).[2]

It is well-settled that "conspirators are liable for all of the acts and foreseeable

---

[1] This conduct is memorialized in the Second Superseding Indictment (DE #274).

[2] The Honorable James C. Hill, in a concurring opinion, noted in Snyder that "The type of crime committed here tends to provide a relatively small and certain amount of expected gain to defendants and a far larger and less certain loss to innocent investors throughout the market. Here the perpetrators seek something of value for themselves with reckless disregard for their faceless victims. The extent of their wrongdoing will usually greatly exceed what they hoped to derive from their nefarious conduct. . . . Of course, the estimated loss must not be based upon pure guesswork or speculation. If however, there is a good basis for a reasonable estimate, the sentencing court should tend to overlook fine-tuned objections demanding precise dollar and cent calculations of loss." 291 F.3d at 1297 (Hill, J., concurring). Here, the Defendants' conduct was for personal gain (as reflected in their inflated bonuses) and caused grave harm to numerous "faceless victims."

consequences of the conspiracy" and that "the amount of restitution may include related conduct . . . if the loss flowed directly from the conspiracy or scheme." United States v. Ramos, 180 Fed. Appx.894, 895 (11th Cir. 2006) (citing United States v. Dickerson, 370 F.3d 1330 (11th Cir. 2004)); see also United States v. Alas, 196 F.3d 1250, 1251 (11th Cir. 1999).

## II. ANALYSIS

### A. Bank Fraud

As discussed above, only Defendant Masferrer is liable for restitution for bank fraud. Defendant Masferrer was convicted of eight (8) counts of bank fraud pursuant to 18 U.S.C. § 1344. The Court has heard and reviewed evidence from the Government concerning two different methodologies by which the Court may calculate the amount of restitution Defendant Masferrer owes for his bank fraud conviction at both the July 26, 2006 Sentencing Hearing and the September 8, 2006 Restitution Hearing and in briefs submitted by both parties. The Court notes that the parties are in agreement to the final calculations under either of these methodologies, though Defendant objects to either methodology.

#### 1. The Russia-Latin Ratio Swap

As the Court addressed in open court at the July 26, 2006 Sentencing Hearing, Defendant Masferrer's objections to the methodologies offered by the Government are unpersuasive. The Government's methodologies are supported by the testimony of their expert witness, Lew Sellars,[3] who demonstrated that, due to Defendant Masferrer and his co-conspirators' conduct, the Bank experienced a real and actual loss of $22,223,378.00 form the 1998 Russia-Latin "Ratio

---

[3] Mr. Sellars is a financial auditor in the Economic Crimes Section for the United States Attorney's Office for the Southern District of Florida. Tr. Restitution Hrg. of Sept. 8, 2006 at 27.

3

Swaps" under the "First Methodology." Tr. Restitution Hrg. of Sept. 8, 2006 at 71; see also Govt. Am. Restitution Memo. at 14. The "First Methodology" comprises the total of the overpayments for the acquired assets under the 1998 Russia-Latin "ratio swap." The "Second Methodology," as explained by Mr. Sellars, gives credit to Defendant Masferrer for the Bank's realized gain after the assets acquired during the "ratio swap" were sold at prices higher than the markdown fair values or restated book values according to the ledgers of Hamilton Bank. See Tr. Restitution Hrg. of Sept. 8, 2006 at 37. Under this "Second Methodology," a benefit of $7,262,981.00 inures to Defendant Masferrer for an increase in the Latin loans' value and the Bank's partial principal reduction payment in connection with one of the acquired assets. Defendant Masferrer objects to either of these methodologies on the grounds that the actual, realized loss to the Bank was at most $2.23 million as a result of the Russia-Latin loan ratio swap and, at most, $500,000.00 for the 1999 AHMSA transactions, resulting in a maximum exposure of $2.723 million for Defendant Masferrer on the bank fraud conviction.

      The Court finds that the Second Methodology is the most accurate and reasonable determination of the actual loss suffered as a result of Defendant Masferrer and his co-conspirators' actions (as related to Defendant Masferrer's bank fraud conviction) due to the 1998 Rusia-Latin "Ratio Swaps." The Second Methodology takes into account the actual loss the Bank experienced. Defendant Masferrer's argument that the Bank only experienced a loss of $2.23 million as a result of the ratio swap is unavailing. As Mr. Sellars testified, the $22,223,378.00 loss to the Bank was an actual, realized loss that was merely shifted and hidden through the illegal actions of Defendant Masferrer and his co-conspirators. For purposes of calculating a reasonable estimate of loss for restitution only, this amount should be reduced by

4

the amount that the Latin assets increased in value during the relevant time period and any monies the Bank was able to recover by selling these assets at this increased value. Thus, the amount of $14,960,397.00 is the accurate sum for restitution purposes.

## 2. The 1999 AHMSA "Ratio Swap"

The Government also offers two methodologies to calculate the actual, realized loss to the Bank as a result of the illegal 1999 AHMSA "ratio swap." Like the 1998 Russia-Latin "ratio swap," the AHMSA "ratio swap" generated overpayments that were concealed by Defendant Masferrer and his co-conspirators. The testimony of Defendants Bernace and Jacobs, along with that of the Bank's outside auditor, Joseph Echevarria, established that the actions of Defendant Masferrer and his co-conspirators caused the Bank to make overpayments of $3,919,000.00, which is the amount of the actual, realized loss.

Under the Government's Second Methodology, in a similar fashion to the 1998 Russia-Latin "ratio swap," Defendant Masferrer and his co-conspirators are given credit for the eventual increase in value of the assets despite the overpayment. Again, for restitution purposes only, the resulting amount of actual, realized loss when viewing the Bank's "overall experience" with the 1999 AHMSA "Ratio Swap" is $2,125,956.00. The Court finds this amount to be an accurate, reasonable calculation.

## 3. The Inflated Bonuses

As noted during the trial and at the September 8, 2006 Restitution Hearing, the Defendants also received inflated bonuses as a result of the acts of bank fraud. Defendant Masferrer received a bonus that was inflated by $666,701.00, Defendant Bernace received a bonus inflated by $60,410.00, and Defendant Jacobs received a bonus inflated by $48,328.00.

5

### 4. Payments Made to the OCC by Defendants

The Defendants have, however, made payments to the Office of the Comptroller of the Currency ("OCC") for which they should receive credit that offsets the amount of required restitution. Masferrer has made payments of $464,190.00, Bernace has made payments of $60,410.00 in regards to his inflated bonus, and Bernace has also made payments of $103,756.90 to the OCC as a result of settlement with the OCC. Thus, the total amount of bank fraud related and inflated bonus related, required restitution by Defendant Masferrer, with all payments made deducted, is $17,233,435.10. The Court finds this amount a reasonable calculation of the actual, realized loss experienced as a result of the acts of bank fraud.

In conclusion, the Court orders Defendant Masferrer to make bank fraud related restitution in the amount of $16,127,414.38 to the Federal Deposit Insurance Corporation as Receiver for Hamilton Bank. Once this debt is satisfied, Defendant Masferrer is ordered to make bank fraud related restitution in the amount of $1,106,020.72 to Twin Cities Fire Insurance Company for payments made by Twin Cities Fire Insurance Company under its directors and officers liability policy with Hamilton Bank. The debt and restitution to Twin Cities Fire Insurance Company is subordinate to the debt and restitution to the Federal Deposit Insurance Corporation.

### B. Securities and Investor Fraud

Defendants Masferrer, Bernace, and Jacobs are each liable for restitution for securities and investor fraud, as discussed above. Each Defendant was convicted of securities fraud pursuant to 15 U.S.C. § 78j, with a determination that the offense ended in May 2002. In this case (as in many securities fraud cases), the loss to investors attributable to the malfeasance of

the defendants is not readily apparent. When dealing with complex financial instruments and publicly-held companies whose share prices are affected by a number of factors, courts may have difficulty calculating the exact loss to the victim investors. The Eleventh Circuit Court of Appeals has instructed district courts that "just because each individual's precise loss cannot be ascertained does not mean that the district court should abandon a loss calculation altogether." Snyder, 291 F.3d at 1296. Due to the Defendants' actions, false financial information regarding Hamilton Bancorp's earnings in Securities and Exchange Commission ("SEC") and OCC filings were disseminated. Further, investors and analysts were misled and relied on this false information.

The Government's methodology for ascertaining the actual loss experienced by investors is both reasonable and, in fact, conservative. First, the Government determined the period during which investors were harmed by Defendants actions, concluding that October 1998 through January 2001 was the relevant period. The Government then mailed approximately 11,000 letters to individuals participating in a class action lawsuit against Hamilton Bancorp to determine which investors purchased and sold Hamilton Bancorp stock during that period. The Government then concluded that to be considered a victim, an investor must have purchased Hamilton Bancorp stock from October 21, 1998 (the date of Hamilton Bancorp's conference call to discuss its Third Quarter 1998 income results with analysts and investors) to December 24, 2000 (the date of Hamilton Bancorp's Restated Form 10K in which it acknowledged that it had overstated its annual earnings by approximately $22 million). The Government next determined the period in which to analyze all stock sales or stock holding by the above victims to estimate the monetary losses. The Government concluded that the period of October 21, 1998, to January

25, 2001, was the reasonable "sale period."[4] Victims were given full credit for any losses for a decline of the stock price of their holdings sold on or before January 25, 2001. Victims who did not sell their shares by January 25, 2001, were given credit for the losses suffered by the decline of their holdings between the purchase price and the closing price of Hamilton Bancorp on January 25, 2001. That closing price was $8.056/share. The Court notes that the Government is only seeking restitution for victims who came forward with documented losses during the relevant time periods instead of using "average losses" based upon the total number of shares bought or sold during the time period or other less accurate methods.

Based upon the above methodology and the identified victims listed in Exhibit 1 of the Government's Response to Defendant Eduardo Masferrer's Restitution Memorandum and Government's Final Revised Restitution Calculations (DE #552), the amount of $14,546,569.12 is a reasonable, accurate estimate of the actual, realized loss experienced by investors.

### III. CONCLUSION

Based upon the foregoing, it is

ORDERED AND ADJUDGED that:

1. Defendant EDUARDO A. MASFERRER is ordered to pay the sum of $17,233,345.10 as restitution for his bank fraud-related convictions pursuant to MVRA, 15 U.S.C. § 3663(a)(1). Of this total amount, $16,127,414.38 is to be paid to the FDIC. Upon satisfaction of this debt, the subordinate debt of $1,106,020.72 must be paid by Defendant Masferrer to Twin City Fire

---

[4] See Govt. Am. Restitution Memo. at 5. This period is the same as the one used to determine the potential victims (October 1998 conference call until the December 2000 restated 10K), plus thirty (30) days to allow investors to learn of the restated earnings and act accordingly. The Court finds this time period and the 30 day extension reasonable.

Insurance Company.

2. Defendants EDUARDO A. MASFERRER, CARLOS BERNACE, and JOHN JACOBS are each jointly and severally liable in the amount of $14,546,569.12 for restitution to be made in the amounts specified in Exhibit 1 of the Government's Response to Defendant Eduardo Masferrer's Restitution Memorandum and Government's Final Revised Restitution Calculations (DE #552).

3. The Government is instructed to file a proposed payment schedule for all Defendants in light of this Order within **five (5)** days.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th day of October, 2006.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
Clerk of Court, Eleventh Circuit Court of Appeals